UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WAITES LANDING WATERFRONT ASSOCIATION, an association doing business in Falmouth, Maine<br><br>Plaintiff<br><br>v.<br><br>ONE BEACON INSURANCE COMPANY, a Pennsylvania insurance company with its principal offices in Massachusetts<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff WAITES LANDING WATERFRONT ASSOCIATION, and for its Complaint against Defendant ONE BEACON INSURANCE COMPANY, states as follows:

**NATURE OF THE ACTION**

1.  As the result of a major northeaster on May 23-24, 2005, a 113 foot pier, ramps and floats located on the southwest shore of Casco Bay in Falmouth Foreside, Maine owned by Waites Landing Waterfront Association ("Waites Landing") was severely damaged. A chart showing the property's location is attached as Exhibit A. The storm, which caused serious damage to several piers, docks, and vessels along the southern Maine coast, generated wind speeds of 39 mph and gust speeds of 51 mph from the northeast direction.

{W0443991.1}

2. Waites Landing's pier, ramps and floats were insured under a Pier, Wharves and Docks policy form issued by One Beacon Insurance Company ("One Beacon") and on May 25, 2005 Waites Landing reported to One Beacon that the northeaster had severely damaged its property.

3. Notwithstanding that "windstorm" is a specifically covered peril under the Pier, Wharves and Docks policy form, One Beacon refused to pay any part of the damages suffered by Waites Landing as a result of the northeaster. One Beacon asserted that the "loss" to the pier, floats and ramps, was caused by "flood waters" and "waves," which, according to One Beacon, are not covered causes of loss because they are not specifically enumerated causes of loss under their Pier, Wharves and Docks policy form. On the basis that windstorm "alone" was not the proximate cause of the "loss," One Beacon denied any responsibility to pay for the northeaster's damage to the Waites Landing property. A true and complete copy of One Beacon's denial letter to Waites Landing dated June 27, 2005 is attached as Exhibit B.

4. One Beacon's denial was wrongful because:

- The northeaster and its extreme winds not only damaged the property but also the windstorm was the fundamental efficient moving cause that set in motion a chain of events, including large waves in high tide conditions pounding directly into the pier located on the south shore of Falmouth Foreside; thus a "windstorm" was the proximate cause of the damages suffered by Waites Landing;

- "Waves" and "floodwater" striking the south shore of Falmouth Foreside were the natural consequence of the northeaster, a "windstorm," and thus they were ensuing causes of loss rather than independent, intervening causes of the damages suffered by Waites Landing;

- While many commercial property policies, including those issued by One Beacon, expressly exclude coverage for damage caused by flood, water and waves, whether driven by wind or not, the One Beacon Piers, Wharves and Docks policy form issued to Waites Landing for property located on the

Atlantic Ocean has no such exclusion or limitation to the windstorm cause of loss.

5. One Beacon must pay the costs of repair and cleanup of the pier, floats and ramps caused by the northeaster, as well as other damages suffered as a result of these events and its denial of Waites Landing's claims.

## PARTIES

6. Plaintiff Waites Landing is an association with its principal place of business in the State of Maine.

7. Defendant One Beacon is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at One Beacon Street, Boston, Massachusetts.

## JURISDICTION

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

9. For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the State of Maine.

10. For purposes of 28 U.S.C. § 1332, Defendant is a citizen of the States of Pennsylvania and Massachusetts.

11. The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional amount set forth in 28 U.S.C. § 1332.

## FACTS

12. At all relevant times, Waites Landing owned land, a 113 foot pier, walkways and floats located at the end of Waites Landing Road in Falmouth, Maine and bordered by Casco Bay (the "Property").

13. On or about May 23 and 24, 2005, a northeaster pummeled the southern Maine coast with winds and gusts in excess of 50 mph causing extensive damage to the coast,

including breaking power poles, cutting power to 13,000 customers, ripping boats and docks from moorings, damaging ocean front property, roads and seawalls (the "Northeaster").

14. In Portland and Falmouth, the Northeaster caused dozens of boats to pull free of moorings and docks, and caused extensive damages to marinas exposed to the Northeast winds including the Falmouth Town Landing, the Portland Yacht Club, Handy Boat Services, the Property, and the Maine Yacht Center.

15. According to National Weather Service, the Northeaster at the Portland Jetport, generated maximum wind speeds of 39 mph from the northeast, maximum gust speeds of 51 mph and the weather buoy at the mouth of Portland Harbor recorded wind gusts of 54 mph.

16. The Northeaster coincided with a full moon and the highest tide of the month with "savage results as the wind gusts whipped the high tide into a seething froth pounding the shore." Falmouth Harbormaster, John Dalton.

17. As a direct and proximate result of the Northeaster, the Property was damaged, including without limitation, the pier was completely destroyed beyond salvage and the cribs and pilings had to be demolished and replaced as well as damage to floats, decks, walkways and other appurtenances to the pier. The cost of reasonably restoring the Property to its condition immediately before the Northeaster and/or the cost of replacing the Property with substantially identical property was One hundred thirty five thousand dollars ($135,000.00).

## INSURANCE POLICY

18. In consideration for a premium paid, One Beacon issued commercial general liability and inland marine policies to Waites Landing for the policy period June 1, 2004 to June 1, 2005, insuring the Property for a variety of coverages. The policy included "inland marine" special coverage, including Piers, Wharves and Docks coverage with a $175,000

limit of liability. A copy of the Inland Marine Policy, including the Piers, Wharves and Docks coverage, is attached as Exhibit C.

19. The Insuring Clause for the Piers, Wharves and Docks Form of the Policy expressly provides coverage for the Waites Landing pier, ramp and floats:

> 2. WE WILL PAY FOR DIRECT PHYSICAL "LOSS" TO PIERS, WHARVES AND DOCKS YOU OWN OR ARE IN YOUR CARE, CUSTODY AND CONTROL AND DESCRIBED ABOVE AND UNLESS OTHERWISE SPECIFIED INCLUDES FLOATS, PLATFORMS, GANGPLANKS, PILINGS, WIRING, PIPES AND GROUNDTACKLE.

20. The Covered Causes of Loss provisions for the Piers, Wharves and Docks form of the Policy expressly provides coverage for damage to the Property caused by windstorm such as occurred during the Northeaster of May 23 and 24, 2005:

> 4. COVERED CAUSES OF LOSS
>
> COVERED CAUSES OF LOSS MEANS THE FOLLOWING:
> ……….
> d. WINDSTORM OR HAIL, BUT NOT INCLUDING:
> (1) FROST OR COLD WEATHER; OR
> (2) ICE (OTHER THAN HAIL) SNOW OR SLEET, WHETHER DRIVEN BY WIND OR NOT.

21. The Policy does not define "windstorm."

22. The Northeaster constituted a "windstorm" due to its extraordinary force and violence and also because it caused damages to numerous piers, docks, wharves, vessels and property in Casco Bay and Falmouth which would not ordinarily be damaged, but for a windstorm of such a magnitude.

23. The Northeaster did not fall within the policy's exception for windstorms involving frost, cold weather, ice, snow or sleet, "whether driven by wind or not" because the

Northeaster generated only rain for precipitation and the temperature never dropped below 44 degrees Fahrenheit on May 23-24, 2005.

24.     The Northeaster's extreme winds not only damaged the Property, but also were the fundamental efficient moving cause that set in motion a chain of events, including large waves generated across the Bay during high tide, that, as they approached the shallower water in Falmouth Foreside, crashed into the Property.

25.     Therefore, the Northeaster, a windstorm was the direct physical cause of the damages suffered to the Property.

## COUNT I - BREACH OF CONTRACT

26.     Plaintiff repeats and realleges with the same force and effect as set forth herein, paragraphs 1-25 of this Complaint.

27.     In its denial letter dated June 27, 2005, One Beacon denied all of Waites Landings claim for damages to the Property caused by the Northeaster on the basis that:

> "[L]ateral force alone would not have lifted the walkway members. Since our investigation reveals that the damage was caused by flood waters and waves, which is not a peril listed above, we must respectfully deny your claim."

A copy of the June 27, 2005 letter is attached as Exhibit B.

28.     The Policy and, in particular, the Piers, Wharves and Docks form contains no requirement that the covered cause of loss, windstorm, must be the sole proximate cause of the loss.  Instead, the policy only requires that the covered peril be the "direct" cause which means the proximate cause.

29.     The "waves and flood waters" asserted by One Beacon as the cause of the damage were not new or independent forces from the Northeaster but rather ensuing causes of

loss that were the natural consequence of the Northeaster itself; if there had been no windstorm, the high tide waters would not have damaged the Property.

30. Although many property damage policies, including those frequently issued by One Beacon, contain specific exclusions for damages "caused by waves and flood waters, whether driven by wind or not", the Policy insuring the Waites Landing property located on the Atlantic Ocean contains no such exclusion. One Beacon's Basic Form CP 10 10 04 02, expressly excludes damage caused by "flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not" from its basic commercial property standard policy. However, the One Beacon Piers Wharfs and Floats policy issued specifically for the Waites Landing waterfront property contains no such exclusion.

31. Although the One Beacon Piers Wharfs and Floats policy does contain a "water" exclusion, that "water" exclusion does not even mention flood waters or waves:

> **B. EXCLUSIONS**
>
> **1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:**
>
> **(f) WATER**
>
> **UNDER THE GROUND SURFACE PRESSURE ON OR FLOWING OR SEEPING THROUGH**
> **(a) FOUNDATIONS, WALLS, FLOORS OR PAVED SURFACES;**
> **(b) BASEMENTS, WHETHER PAVED OR NOT; OR**
> **(C) DOORS, WINDOWS OR OTHER OPENINGS**
> **BUT IF "LOSS" BY FIRE, EXPLOSION OR SPRINKLER LEAKAGE RESULTS, WE WILL PAY FOR THAT RESULTING "LOSS."**

32. Both Waites Landing and One Beacon understood that the Piers Wharfs and Floats Policy insured a pier, ramps and floats located on the south shore of the Atlantic ocean, and thus was subject to damage by windstorm which could cause "flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray." Therefore, the

damage caused by the Northeaster was precisely the kind of property damage insured under the policy.

33. As a direct and proximate result of One Beacon's denial of coverage, on July 7, 2005 Waites Landing had to obtain a $100,000 loan from TD Banknorth at a fixed rate of 6.75% for the sole purpose of rebuilding the pier.

**WHEREFORE**, Waites Landing demands judgment against One Beacon for the full amount of the costs of repair and replacement of the Property, together with interest and costs, and such other and further relief as is just and proper.

### COUNT II – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

34. Plaintiff repeats and realleges with the same force and effect as set forth herein, paragraphs 1-33 of this Complaint.

35. In every insurance contract issue in Maine, the insurer has a duty to act in good faith and to deal fairly with its insured.

36. The basis of One Beacon's total denial of coverage to Waites Landing for the loss is that the Northeaster was not the sole cause of the "loss" and that the natural consequences of that windstorm, "flood waters and waves" were not specifically listed causes of loss.

37. It is black letter insurance law that "where the specified peril sets other causes in motion, and therefore, is connected with the final loss, the peril will be regarded as the proximate cause of the entire loss, and the loss is within policy coverage." 10A Couch on Insurance (3rd Edition) § 148:61, Contributory and Concurrent Causes.

38. The Pier, Wharves and Docks form issued to Waites Landing does not contain the standard commercial property exclusion for damage caused by "flood, surface water,

waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not" and yet, One Beacon's denial treats the Policy as containing such language.

39. Upon information and belief, One Beacon also issued commercial property insurance to other marinas and piers in Southern Maine coast, which suffered damage as a result of the Northeaster and One Beacon has denied coverage to them as well.

40. In particular, One Beacon provided commercial property insurance to the Maine Yacht Center, which suffered over $1,000,000 of damage to its property as a result of the Northeaster and One Beacon denied coverage for that loss as well.

41. Upon information and belief, One Beacon denied Waites Landing claim to avoid any precedent of paying for any piers, wharves and docks claims as a result of the Northeaster and thereby avoid payment of much larger property claims, such as the Maine Yacht Center claim.

42. Waites Landing representatives repeatedly tried to discuss the basis for One Beacon's denial but One Beacon failed to respond to the analysis; for example, see letter of Elizabeth Pike of BankNorth Insurance Group to Jeffrey McLain dated June 28, 2005 attached as Exhibit D.

43. By refusing to pay Waites Landing's claim in spite of the clear black letter law to the contrary, forcing its insured to finance the repairs to the Property and to take legal action in order to recover under the Policy, One Beacon breached its duty to act in good faith and to deal fairly with its insured.

44. As a direct and proximate result of One Beacon's breach of duty, Waites Landing has suffered general and consequential damages, including without limitation, the

costs of repairing and replacing the Property, incurring a $100,000 debt at 6.75% interest and the legal costs of prosecuting the claim and this action.

**WHEREFORE**, Waites Landing demands judgment against One Beacon for such damages as are reasonable under the circumstances, together with interest and costs and such other and further relief as is just and proper.

### COUNT III– VIOLATIONS OF 24-A M.R.S.A. §2436

45. Plaintiff repeats and realleges with the same force and effect as set forth herein, paragraphs 1-44 of this Complaint.

46. By engaging in the foregoing, One Beacon failed to promptly pay Waites Landing's claim in violation of 24-A M.R.S.A. §2436.

**WHEREFORE**, Waites Landing demands judgment against One Beacon in the amount of its overdue claim together with interest on that amount at the rate of 1½ %, per month, reasonable attorney' fees, costs and such other relief as is just and proper.

### COUNT VI – VIOLATION OF 24-A M.R.S.A. § 2436-A

47. Plaintiff repeats and realleges with the same force and effect as set forth herein, paragraphs 1-46 of this Complaint

48. One Beacon's total denial of coverage on the basis that Northeaster was not the sole cause of the "loss" and that the natural consequences of that windstorm, "flood waters and waves were not specifically listed causes of loss" is a misrepresentation of the terms of the Policy.

49. One Beacon's total denial of coverage on the basis that Northeaster was not the sole cause of the "loss" and that the natural consequences of that windstorm, "flood waters

and waves" were not specifically listed causes of loss is a denial "without just cause" within the meaning of 24-A M.R.S.A. § 2436-A (2).

50. By engaging in the foregoing, One Beacon violated 24-A M.R.S.A. § 2436-A.

51. Waites Landing suffered damages as a direct and proximate result of One Beacon's violation of 24-A M.R.S.A. § 2436-A, including without limitation, the cost of repairing and replacing the Property, incurring a $100,000 debt at 6.75 % interest, and legal costs and expenses.

**WHEREFORE**, Waites Landing demands judgment against One Beacon for compensatory damages together with interest on that amount at the rate of 1½ % per month, reasonable attorneys' fees, costs and such other relief as is just and proper.

### REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury.

Respectfully submitted,

/s/ Louise K. Thomas
Louise K. Thomas
Attorney for Plaintiff Waites Landing

Pierce Atwood LLP
One Monument Square
Portland, ME  04101
(207) 791-1100

DATED:  February 10, 2006